IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CONNIE R. MELASHENKO and ROBERT A. MELASHENKO, Plaintiffs, vs. UNIGARD INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF ILLINOIS Defendant. | CV-16-122-BMM-JTJ **ORDER** |

## I. SYNOPSIS

Defendant Unigard Insurance Company ("Unigard") filed a Motion in Limine to "exclude any and all testimony and evidence that Plaintiff's April 3, 2014 fall was causally connected tot he injuries she allegedly suffered from her November 2, 2013, pedestrian-auto accident" by several of Ms. Melashenko's treating physicians. (Doc. 22). The motion is fully briefed. (Docs. 23, 26-27). Unigard's motion is denied.

## II. BACKGROUND

On November 2, 2013, Ms. Connie Melashenko was struck by a vehicle while crossing the street in Camden, Maine. Ms. Melashenko reported pain in her right

1

elbow, right wrist, and right ankle area, which required surgery. After she returned home to Great Falls, she was under the care of several providers. On April 4, 2013, Ms. Melashenko suffered a fall in her kitchen, resulting in her fracturing her right arm, injuring her right knee and right ankle, breaking her nose and lacerating her lip. (Docs. 23 at 3-4, 26 at 6-8).

In Ms. Melashenko's expert disclosure, she identified fourteen medical providers (one retained expert, thirteen non-retained experts) to testify as to their care and treatment of Ms. Melashenko for her injures. (Doc. 23-1 at 2-9). Unigard seeks to exclude testimony from six of the potential non-retained witnesses: (1) Alexander Chung, MD; (2) Ronald G. Ray, DPM; (3) Melanie Raffensperger, OTR/L; (4) Traci L. Martin, PT; (5) Gregg D. Pike, MD; and (6) David W. Shenton, Jr., MD (hereinafter collectively the "treating providers"). (Doc. 23 at 2). Ms. Melashenko's disclosure stated that the treating providers "may testify that the injuries for which [they] treated her were caused by the November 2, 2013, auto accident and her subsequent fall which occurred on April 3, 2014, and that the subsequent fall on April 3, 2014, was caused by the injuries sustained in the November 2, 2013, accident." (Doc. 23-1 at 3). Ms. Melashenko did not provide written reports for the treating providers, listing them instead as "non-retained experts." (*Id*. at 2). Unigard filed the instant motion on September 6, 2017. (Doc. 22).

## IV. PARTIES' ARGUMENTS

Unigard argues that none of the treating providers' records of Ms. Melashenko's treatment identify or establish a causal connection between the November 2, 2013 pedestrian-auto accident and the April 3, 2014 fall. (Doc. 23 at 4). Because Ms. Melashenko did not provide an expert report pursuant to Rule 26(a)(2)(B), Unigard argues that the treating providers should be prevented from offering conclusions regarding such causation which were not formulated during their course of treating Ms. Melashenko. (*Id.* at 6).

Ms. Melashenko argues that Rule 26(a)(2)(B) did not require her to provide a written report for the treating providers because the treating providers were not retained as experts. (*See* Doc. 23-1 at 2). Furthermore, Ms. Melashenko argues that the treating providers' opinions on whether the injuries sustained in the November 2, 2013 collision caused the April 3, 2014 fall are admissible because the medical records indicate that each treating provider considered the November 2, 2013 collision in their treatment of Ms. Melashenko's right knee and ankle, as well as this fall's in causing all of the falls Ms. Melashenko suffered, specifically the April 3, 2014 fall. (Doc. 26 at 5).

//

//

## V. DISCUSSION

### A. Legal Standard

Courts have "wide discretion" when considering and ruling on a motion in limine. *Ficek v. Kolberg—Pioneer, Inc.*, 2011 WL 1316801 at *1 (D. Mont. Apr. 5, 2011) (citing *Trichtler v. Co. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004)). A court will grant a motion in limine and exclude evidence only if the evidence is "inadmissible on all potential grounds." *Educ. Logistics Inc. v.. Laidlaw Transit Inc.*, 2012 WL 1142513, at * 1 (D. Mont. April 4, 2012) (citations and internal quotation marks omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (citations and internal quotation marks omitted). "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* (citations and internal quotation marks omitted).

### B. Analysis

The issues of this motion are whether the treating providers were exempt from the required disclosure of a written report under Federal Rule of Civil Procedure 26(a)(2)(B), and if so, what of their opinions were formed within the course of their

4

care, treatment, and diagnosis of Ms. Melashenko.

1. **Rule 26(a)(2)(B) required disclosure**

Rule 26(a)(2)(B) requires the disclosure of expert testimony to be accompanied by a written report when "the witness is one retained or specifically employed to provide expert testimony in the case." Rule 26(a)(2)© provides that, if a witness is not required to provide a written report, the disclosure of the witness must include the subject matter on which the witness will present evidence and a summary of the facts and opinions to which the witness will testify.

Treating physicians are not generally subject to the mandatory expert witness disclosure requirements. *St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. April 2, 2010) (citing *Arneson v. Mich. Tissue Bank*, 2007 WL 4698986, *10 (D. Mont. Mar. 26, 2007)). A treating physician is exempt from the Rule 26(a)(2)(B) written report requirement to the extent that his opinions were formed during the course of treatment. *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

In this case, the treating providers are not subject to the disclosure requirement of Rule 26(a)(2)(B). Ms. Melashenko's expert witness disclosure states both the subject matter of the treating providers' expected testimony and summarizes the facts and opinions of the treating providers, and therefore complies with Rule 26(a)(2)(C).

The expert witness disclosure states that the treating providers will testify as to their "care, treatment and prognosis of Mrs. Melashenko" that are "reflected in the records of [their] treatment." (*See* Doc. 23-1 at 3-4, 6, 8). Accordingly, the treating providers are not subject to Rule 26(a)(2)(B) and may testify as to matters pertaining to their care, treatment, and prognosis of Ms. Melashenko.

2. **Causation**

Having determined that the treating providers may testify as to matters pertaining to their care, treatment, and prognosis, the next issue is whether the treating providers established a causal connection between the November 2013 accident and the April 2014 fall during the course of said treatment.

"A treating physician's opinion on matters such as causation, future treatment, extent of disability and the like are part of the ordinary care of a patient." *St. Vincent*, 267 F.R.D. at 345. The treating physician may also give an opinion as to the cause of the injury or degree of the injury in the future if the opinion is based on personal knowledge, history, treatment of the patient, and facts of his examination and diagnosis. *Id.* However, an opinion regarding causation may be excluded when there is no evidence in the record suggesting the treating provider considered or determined the cause of the injury. *Mears v. Safeco Ins. Co. of Illinois*, 888 F.Supp.2d 1048, 1056 (D. Mont. 2012), *aff'd*, 572 Fed. Appx. 503 (9th Cir. 2014) (unpublished). The party

6

offering the testimony bears the burden to establish that the treating providers previously "considered or determined the cause of [her] injuries during the course of treatment." *Id.* at 1056 (quoting *Meyers v. Natl. RR Passenger Corp. (Amtrak)*, 619 F.3d 729, 735 (7th Cir. 2010).

Unigard argues that the treating providers did not formulate opinions about the causation of Ms. Melashenko's April 2014 fall in the course of their examination, diagnosis, and treatment, and should therefore be prevented from testifying as to any alleged causation between the November 2013 collision and the April 2014 fall. "[U]pon review of [the treating providers'] medical records, there is no evidence that [they] considered or established a causal connection between Mrs. Melashenko's injuries from the November 2013 accident and her later fall in April of 2014." (Doc. 23 at 6).

Unigard relies on *Mears v. Safeco Ins. Co. of Illinois,* for the holding that if a witness is to fall within the "treating physician" exception in Rule 26(a)(2)(B), that witness may not testify regarding "information acquired from outside sources." 888 F.Supp.2d at 1055. In *Mears*, the Court rejected the chiropractor's testimony because there was "no evidence here that [the chiropractor] developed an opinion about the cause of [the plaintiff's] injuries during the course of treatment[,]" and that he "relied on information obtained outside the course of treatment and his opinions extended

7

beyond the treatment rendered[.]" *Id.* at 1056. Thus, he was required to disclose a written report under Rule 26(a)(2)(B) in order to testify as to those additional opinions. Unigard argues that because the treating providers did not consider or establish a causal link in their medical records, any opinion to that effect would have necessarily been acquired from an outside source and should be excluded.

The facts of *Mears*, however, are extraordinary and inapposite to this case. In 2008, Mears suffered a back injury after being struck by a vehicle. *Mears*, 888 F.Supp.2d at 1052. After receiving medical treatment, Mears settled with his insurer, Safeco, and agreed to release them from liability. *Id.* at 1054. In 2010, Mears began seeing a chiropractor for lower back pain he claimed was because of physical activity the week before. *Id.* He told the chiropractor that he had healed "100%" from the 2008 car accident, and never once during his six visits related any of his symptoms to the 2008 accident. *Id.* In 2011, after Mears discovered he had severe back problems requiring approximately $150,000.00 in medical costs, he told his chiropractor he had been experiencing back pain ever since the 2008 accident. *Id.* The chiropractor confirmed that this information was totally different from what Mears had told him both on his intake form and during his treatment. *Id.* at 1055. The Court excluded the chiropractor's testimony regarding causation because he did not consider the 2008 accident in the course of Mears' treatment, and was instead opining on causation

based on additional information outside the course of his treatment. *Id.* Because the chiropractor was provided information that he did not consider during the course of treatment—Mears changing his story months after he finished treatment—he was required to disclose a written report under Rule 26(a)(2)(B). Failing to do so necessitated the exclusion of the chiropractor's testimony as to that additional information. *Id.* at 1055-56.

The facts of this case at minimum suggest the treating providers based their diagnoses in part on Ms. Melashenko's November 2013 injury, or were at least aware of the November 2013 accident during their treatment of her. Ms. Melashenko testified in her deposition that she had problems with her right ankle "consistently from November 2 of 2013," and told her treating providers as much. (Docs. 26 at 7; 26-5 at 4). One of the treating providers, Dr. Alexander Chung, first saw Ms. Melashenko days after the November 2013 accident and described the injuries related to that accident. (Doc. 26-3 at 1). Dr. Chung treated Ms. Melashenko several more times leading up to the April 2014 fall, and for several years after, noting on July 25, 2016 that Ms. Melashenko had "right lateral ankle instability (chronic)." (*Id.* at 23). Dr. Chung's records suggest that he "considered" the November 2013 collision in relation to his almost three-year treatment of Ms. Melashenko.

Additionally, the records of Dr. Ronald Ray relate similar conclusions

9

suggesting a causal connection between the November 2013 collision and the April 2014 fall. Dr. Ray's September 27, 2016 treatment note states:

> [Ms. Melashenko] does describe a history of multiple bouts of instability where the right ankle and foot will invert uncontrollably from underneath her resulting in falls and injury. . . . Patient relates a history of a motor vehicle accident where she was hit while walking in a crosswalk by a van on November 13[sic], 2013. . . . She unfortunately continues to experience ongoing pain in the ankle and instability. She had a severe sprain and fall in April 2014 which resulted a fracture of her right humerus and a fracture[sic] patella as well as soft tissue injury. She has had numerous other bouts of instability since then.

(Doc. 26-6 at 2-3). Dr. Ray learned of the November 2013 accident during the course of his treatment and subsequently diagnosed Ms. Melashenko's problem as "Ankle instability" and "Anterior ankle impingement." (*Id.* at 4). While not conclusive, this evidence certainly suggests Dr. Ray considered the November 2013 collision as being a cause of the April 2014 fall during the course of his treatment.

The remaining treating providers' records reflect a similar consideration of Ms. Melashenko's medical history. Dr. Gregg D. Pike's November 15, 2016 record states Ms. Melashenko came in for right lower extremity injuries, and from what she told him, "all these symptoms started when she was hit while going across a crosswalk when traveling out of state in 2013." (Doc. 26-7 at 2). Dr. David W. Shenton, Jr.'s record from June 12, 2017 states Ms. Melashenko came in regarding a problem with her right knee: "11/13[sic]/13 initial onset of knee problem. Motor vehicle versus

10

pedestrian accident. Crosswalk. Hit by a van. . . . persistent problems with the right knee and right ankle since." (Doc. 26-8 at 1). Ms. Melashenko's physical therapist, Traci Martin, also notes her lower extremity weakness as a "chronic condition" and states as her therapy diagnosis that Ms. Melashenko has "R and L lower extremity functional weakness; history of injury on the right and recent injury to the left side." (Doc. 26-9 at 1, 6). Finally, Ms. Melashenko's occupational therapist, Melanie Raffensperger, saw her on May 7, 2014, and noted the April 2014 fall as the onset of the present illness, as well as the November 2013 accident under Ms. Melashenko's past medical history. (Doc. 26-9 at 13).

Unigard contends that these records merely indicate an attenuated relationship between the November 2013 collision and the April 2014 fall and do not establish a causal connection between the two injuries. Moreover, Unigard argues that the basis for any opinion on causation is Ms. Melashenko's own subjective reporting of her medical history. The standard in *Mears*, however, is that there is evidence in the record "suggesting" that the treating provider considered the cause of the injury. Undoubtedly, a physician would consider the patient's own reporting of her medical history, even if subjective.

After a review of the pertinent medical records from each treating provider, there is clearly evidence in the record suggesting the treating providers "previously

considered or determined the cause of [the plaintiff's] injuries during the course of treatment." *Mears*, 888 F.Supp.2d at 1056 (citation omitted). Thus, their opinions will be admissible provided the treating providers make the requisite foundational showing that they developed these opinions during their course of treating Ms. Melashenko.

## VI.  CONCLUSION

Unigard's motion is denied. Ms. Melashenko was not required to provide a written report when disclosing the treating providers as witnesses under Rule 26 (a)(2)(B), and the treating providers are allowed to provide opinion testimony regarding causation at trial, provided there is a foundational showing that they developed their opinions during the course of treating Ms. Melashenko.

**IT IS HEREBY ORDERED:**

Unigard's Motion in Limine regarding the testimony of Ms. Melashenko's treating providers (Doc. 22), is **DENIED**.

DATED the 23rd day of October, 2017.

_____
John Johnston
United States Magistrate Judge